The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye! Hear ye! Hear ye! All persons having business for this honorable court are admonished to draw near and give their attention as the court is now sitting. God speed the United States and this honorable court. Good morning, everybody. We are here today for oral arguments and we're going to begin with case number 1, 22-2204 and 2205, Martin J. Walsh v. Leroy Johnson. And we'll first hear from Mr. Volker. Good morning. Good morning. Your Honors, I'm here today, obviously, on behalf of Mr. Leroy Johnson, who's the appellant in this case. We're seeking this court's assistance in obtaining a reversal of the district court. Mr. Johnson, as your Honors is aware, was the plan administrator for the particular plan, ERISA plan, issued in this case. I'm going to get right to the defects given the short time we have here. We believe the district court erred, blatantly erred, in finding that Mr. Johnson had been the plan administrator at the time the bond that issued in this case was posted in Michigan. But wasn't he? I mean, under the facts, wasn't he the administrator? I understand the argument is that he didn't sign the form 5500, but what difference does that make if he's the plan administrator at the time the form is filed? He became the plan administrator seven months after the bond was posted. Right, but he was the plan administrator when the form was filed, from what I understand. Not when the 2011 form 5500 was filed, Your Honor. He was the plan administrator. He did not sign that. He was the plan administrator, but it was signed by Shirley Sherrod. But what difference does that make under the law? If he's the plan administrator, he's got fiduciary responsibilities. What difference does it make if he doesn't sign it? Well, the difference it makes is that he did not certify that the information in that document is correct. So the issue in the form 5500, as I understand it, is whether or not the payment was characterized as a distribution to Ms. Sherrod, or whether it was characterized as an expense to the plan, and it was characterized as an expense or a loss to the plan. So he was not in his position or his role at that time. He had no real-time personal knowledge. But what I'm saying is, I got that. But how do we distinguish between, you know, he's not in his role at the time. He becomes the plan administrator, so he's only responsible for things that happen after he becomes the plan administrator, which would include the filing of the form 5500, right? I mean, he should have some, I think, and maybe I'm wrong under the law. You could tell me if I am. It's no problem. But I don't understand how he doesn't have an obligation as a plan administrator to make sure the information in the form 5500 is correct as of the moment he becomes the plan administrator. I think the answer to that is because the fiduciary that actually signed the form was Shirley Sherrod. So he did not sign the form. But what difference does that make? Because wouldn't he have the same defense if he didn't sign the form in 13, 14, and 15, even though he was the plan administrator? So I bet I didn't sign the form. We'd have no excuse for not signing the form in those years because he was the plan administrator the entire calendar year. My understanding is because he was an administrator during the seven months that preceded the post after the bond was made, that he didn't have the knowledge necessary to sign and prepare the form. Mr. Volker? Yes, sir. If I could follow up from a slightly different angle. First of all, what relief was actually imposed against your client in this case? I think there was judgment entered against them, and they were removed as trustees. Removed as trustees. Correct. Is there a money judgment against him? There's a money judgment, is my understanding, your honor. Do you understand? Maybe I missed that. Where is that in the papers? That's my understanding is there was a judgment entered by the district court as a result of money that was removed from the plan that was found to be inappropriately removed and was not properly characterized as an expense to the plan. I'm looking, maybe I missed this, but I'm looking at the judgment, and I was looking for a number. I didn't see it. Can you help me out on this? Well, my recollection is there's a number. I just don't remember the number exactly, your honor, today. I apologize for that. But they were removed as administrators, and they were found to have breached their fiduciary duties. I understand that. And I understand your point about the 2011 bond and the form. But there were a lot of other findings of fiduciary breaches by Mr. Johnson as well. And that's what makes me wonder, as my colleague asked, in essence, what difference does the 2011 issue make in the end? Well, it does make a difference, your honor, and I'll tell you why. Because the district court also, the next error that I believe she made, the court made, it shifted the word to proof to Mr. Johnson. The court found under the Lowen decision that because there was self-dealing in the case, she characterized it as self-dealing on the part of Dr. Sherrod, that she found a presumption that there was a breach of fiduciary duty, when in fact there shouldn't be a presumption. That's the secretary's obligation to prove there was a breach of fiduciary duty. Well, there was plenty of proof here of events involving Mr. Johnson after 2011, once he became the administrator. And I go back to, I guess my question is what difference that would ultimately make. Can I ask you, is it correct? The defense, the secretary has told us in their brief that Dr. Sherrod signed all checks for distributions, expenses, etc. Is that correct? I think that's correct, your honor. Mr. Johnson did not? Okay. So, does Mr. Johnson want to be restored as the fiduciary here? No, I don't think he does, your honor. I understand he's upset about his name being questioned here. Exactly, your honor. I'm looking for other concrete relief he might want. I think he wants to stay in court, and the district court denied him a stay in court because in my review, the court applied a presumption of a breach of fiduciary duty under the Lowen decision. The Lowen decision involves kickbacks. In this case, you didn't have any proof. There was no 406B3 claim brought by the secretary, which is a self-dealing claim. So, without bringing a self-dealing claim, the district court went ahead nevertheless and applied a presumption of breach. It sure looks like self-dealing. Well, even if it is, there's no presumption of breach. That's the difference. It's a burden of proof issue. I mean, I know two of the things the appellate courts look at, obviously, are mistakes on the part of the district court on the burden of proof. That's a very important burden that it be applied to the proper party, right? And in this case, the court was an error, clearly, in finding that Mr. Johnson was the plan administrator when he was not. That had a major effect on her decision and certainly colored her view of whatever Mr. Johnson did or didn't do post-2012. And I think Mr. Johnson's entitled to his day in court with the correct burden and with no presumption that he breached his fiduciary duties, and he's entitled to a day in court where he's acknowledged by the finer of fact that he's not the plan administrator until after the bond was posted. Mr. Volker, what about 1105? Does your client have liability as a co-fiduciary? He has liability. Yes, he does. So why wasn't summary judgment entered on that basis against Mr. Johnson? I don't know why the court didn't enter judgment on that basis, Your Honor. Okay. I don't know. I wasn't part of the underlying proceedings. I don't know the answer to that. Thank you. Thank you. You may reserve the rest of your time for rebuttal, and we're now going to move to Mr. Goetz. Thank you. Thank you. Thank you. Is it Goetz or Gotz? Good morning, Your Honor. It's in answer to the court's question. It's Gotz, but different members of my family say it differently, so there is, I would suggest, no right or wrong way to pronounce it. Thank you. You may continue. But if it may please the court, I represent Dr. Shirley Sherrod, now retired in this particular matter. I know my time is limited, so I would like to just invite the court's attention to at least the, I believe the threshold argument here, which was the denial of the trial court's motion to amend. Now, I know the issue isn't before this court, but I'm aware that after this came down, the Supreme Court of the United States did make a ruling on what it felt was actual notice, and I'm cognitive of that fact. But at the time that this denial was issued, it was done during the very infancy of the case I would submit, about four months, I believe, after the answer was submitted. The court gave a couple reasons why. It did not agree that it was a futile amendment to include actual notice, but it did make a finding that it was untimely, and it also went into a little bit of discussion over what would come of the amendment if it were to go forward. And I will admit that the trial court's reasoning was somewhat prescient in terms of what the U.S. Supreme Court would later find a few years later, but I would submit that that is an evidentiary issue that's not been teed up at that point. I would submit that the core inquiry should be on whether it was timely or untimely, and this was very early. I would submit that the spirit of a motion to amend when the court's looking at a variety of factors is really the negative impact it would have on the case. Mr. Goetz, what would be the point of a remand to pursue what looks like a futile statute of limitations defense at this point? Well, part of my client's request in the third argument is also be restored as part of the trustee. No. Let's focus on the statute of limitations defense, which you wanted to lead with, and I don't see at this point how it could have any legs at all, and I don't see a point there for a remand so that you could develop it further. Could you tell me why I'm wrong about that? Well, I would submit, Judge, at least in terms of the relevant time periods for those particular instances, I would submit that that would take those discussions off the table to . . . I'm sorry. What are you talking about? Are you talking about the bond? Well, Your Honor, in answer to the question, if I've understood the record correctly, and maybe I haven't looked at the court docket recently in terms of what's going on in the trial court, but I believe all the court issued . . . Were you counsel in the trial court? I'm sorry. Say again? Were you counsel in the trial court? No, Your Honor, I was not. Neither of you was. No, that's correct, Judge. Okay. Well, what relief . . . Let me go . . . What relief was ordered against Dr. Sherrod? She was removed as the trustee. Right. And that was the extent of the relief. And she wants to be trustee again? She believes . . . As far as our third argument, Your Honor, she believes the court has abused its discretion in removing her as a trustee. So, that's part of our third argument. Was she charged any money? That . . . At this time, no, Your Honor. There's still ongoing proceedings, from what I understand, in the docket. Where? At the trial level. If I've looked at, there is . . . Wait a second. Okay. Why do we have a final judgment here? I was not at the trial level, Your Honor, so I . . . I . . . Hang on. Yes, Your Honor. Why do we have appellate jurisdiction? There hasn't . . . As far as I understand, there has not been a subsequent pleading filed by the department for a money judgment. The matter has been . . . I'm hoping that counsel for the secretary can help clear this up, because . . . There are routes for us to exercise appellate jurisdiction here, but I thought you had told us . . . You and Mr. Volker had told us in your briefs that we had jurisdiction because we had a final judgment here. It disposed of all claims in the district court, you said, in your brief. That's correct, Your Honor. Is that incorrect? Is that what you're telling me now? There's no further . . . There's no further action that I'm aware of, aside from there is a . . . bond of some kind, but that hasn't been ruled on, in terms of an appeal bond, Judge, or Your Honor. Okay. Is any monetary relief contemplated against Dr. Sherrod? At this time, I don't believe so, Your Honor, but I haven't seen anything that's been filed that would indicate that anyone's seeking actual damages against her. Is there any accounting that would, for example, charge her own account for expenses that were improperly charged as plan expenses? Based on what I understand at the trial court level, I don't believe there has been an accounting done yet. Okay. Okay. Let me go back. Tell me why, please, it would not be futile to remand for consideration of a statute of limitations defense based upon supposed actual knowledge of the Secretary based on these couple of documents from 2012 or so. In terms of . . . In answer to Your Honor's question, what my client is submitting is that when she reached out to, for assistance back then, that she gave them sufficient information for them to have actual knowledge. That she had violated the law? Is that what she said? Well, I wouldn't couch it in those terms. I don't think she did, and that's the problem here. Okay. You've given me your answer. Thank you. What else do you want to tell us? Just very briefly, Your Honor, I'd just reference the removal of her as a fiduciary. I'll stand on my argument in regards to the summary judgment, but I think the fiduciary removal was a bit harsh in light of the circumstances. Under what circumstances can you imagine it would be appropriate to remove a fiduciary? I would submit by method of analogy, when we look at a sanction, usually when we look at striking a plea, that means we look at that as a very severe sanction. I'm talking specifically here about removing a trustee after self-dealing transactions. Well, Your Honor, I would submit that there's other options out there on the table that are more reasonable in the circumstances, such as remediation programs that are often available. And given that what led about to this particular instance, at least as it relates to my client, primarily derived from the previous litigation over the bond, I would look at that as probably a better option for this particular case, Your Honor. This sounds like a sentencing appeal. Okay. Did Dr. Sherrod offer any evidence in the district court of personal expenditures she made out of other resources to defend herself in the litigation with the purchaser of her practice? From what I understand, that was submitted as part of the summary judgment. I believe she just submitted the record showing how the funds were used for those litigation. But I do not believe there was any documents from her own personal account by way of illustration showing that she had paid for this particular item or that particular item out of her own personal funds. So as far as the record in the district court indicates, every penny paid to defend her interests in the sale of the practice came out of the plan. Is that right? I would submit that what she presented was limited to copies of receipts and documents. And we know of no other expenditures by her from her personal resources, correct? If it was mentioned, it's not included in the record, nor could I find it, Your Honor. Thank you, Mr. Gottsch. And Mr. Volkow, we'll be giving you brief rebuttal times after we hear from Ms. Friedle. I'm messing up a lot of names this morning. No worries. It's Friedle. And Ms. Friedle, if you could please begin with appellate jurisdiction. Yes. May it please the court, Martha Plant Friedle on behalf of the United States Secretary of Labor. We do agree that this court has appellate jurisdiction. There's no question that the district court entered a final judgment in order against the defendants. There's no question that they're both planned fiduciaries, that they, that Mrs. Sherrod took the plan funds for use in her personal litigation. And then also in an attempt to defend herself against the fiduciary allegations, which is also a violation of ERISA 410 and nobody disputes. She wrote all these checks to herself. Ms. Friedle, can I just ask one quick question and the way I understand it, most of the money in the plan is hers, right? I mean, there, at least the way I understand it, there's, there's money left in the plan. There was an administrator appointed to administer the plan and distribute the plan assets accordingly to the other folks. So as far as what's left in the plan may be distributed to her or not, but it seems to me like she was taking out her own money. But you just can't do it in that, in the way that she was doing it. Right. That's correct. I mean, essentially. Generally, I'm just generally speaking. No, I, I, I absolutely see what you're saying. The, the, the issue is that she took all this money out. She didn't label it as distributions out of the plan. So we have a twofold problem. One is that she just violated ERISA because she's taking plan assets for her personal use. And the other problem is potentially she could go back. I mean, if the judge's order didn't stand, if we didn't have an independent fiduciary appointed, she could go back and say, well, now I'm retired. I want my full distribution. Wait a minute. You've been taking, you took over $700,000 out of the plan already that essentially should have been not essentially it should have been listed as distributions. But the other thing, of course, losses can be losses can be equally apportioned across the assets in the plan. There's no criminal investigation here, at least that you're aware of. Right. No, Your Honor. So the way I understood it, even by the final or even the fiduciary now is only being paid $12,000 to basically wrap up the funds in the wrap up the plan. Right. Correct. And that's the only when they referred to ongoing district court. There's, there's a final order. There's an independent fiduciary that has to continue to report to the judge. What under the judge's orders, what the findings are. This is what we found. This is our accounting because the judge obviously wants to keep track of that information and make sure it gets wrapped up. And the participants and beneficiaries get paid. Just so we're clear. Yes. We worry about an appellate jurisdiction. Absolutely. And it sounds like you're expecting, well, we have a final injunction in place that has to be administered and the district judge retains jurisdiction to do that. That's fine. That's not, that doesn't give me any heartburn. Do you anticipate that in the administration of that injunction, there would be some accounting for Dr. Dealing in this case? No, I don't anticipate it in part because we have sort of a happy accident or happy outcome, which is that the plan itself has enough money to actually cover right now. We're not, we can, the plan can cover the remaining 17 participants and beneficiaries. So it's not, we not, that's why we didn't request anything more. Okay. Bear with me a moment. But, but Dr. Sherrod has her own account and her own interests as a, as a participant in this. Right. Yes. Is that going to be offset in some way by these transactions that you all have challenged? I don't think so. Your honor, just because of the amount of money that's in the plan funds that, that there's enough to cover what she, what she has there now. I don't, the department's not in my understanding planning to go back and seek an additional money judgment against her. We just want the plan participants and beneficiaries to get paid out and the plan to get, I understand everybody else gets full. And by the way, is this a defined contribution or defined benefit? It's defined benefit. Yeah. Benefit. Okay. Okay. So if it's defined benefit, what happens when you liquidate it? So the way the plan is arranged, there's percentages allotted to each of the individual plan participants. And based on the amount that's in there, currently all the participants and beneficiaries, and this is part of what the independent fiduciary is, is attempting to tire now is how much money is left in the plan, how much money should go to everyone to make sure that they didn't have anything pulled away from their, their amounts. Whether I think the question of whether Dr. Sherrod would have anything like counted against her from what's happened already. I think that's a fair question. I think part of that is the independent fiduciary attempting to make sure everything's settled. But as far as we know, that's not happening. As far as we know, there was enough money that continued to grow in the plan. I think the investment itself was good. We were just concerned about her continuing to hope to be a fiduciary and be able to continue to withdraw money from the plan. And that was really the whole basis of the suit. It was pretty, in our view, pretty simple. We just didn't want her to take more money out of the plan. How did the case come to the secretary's attention? So we had received complaints. And I think participants and beneficiaries who, actually just participants at the time who were looking for their money. And at the same time, she was engaged in her personal litigation in Michigan and her argument, which gets raised in the briefs, is that she was trying to unfreeze the plan. She argued that the Michigan state court froze the entire plan, but the court said, and this court actually answered no to that question already because Mr. Johnson sued Merrill Lynch. It came before this court and the court said that, that no, in fact, these were not full plan assets. These were, the Michigan court was attempting to freeze her ability to withdraw her own assets in order to avoid skirting their judgment, their, their monetary judgment against her. Johnson. I'm sorry. Go ahead. If I could just ask on one fashion, Mr. Johnson has made this point about the 2011 events. And it does appear that there's a factual error in the district court's opinion. What should, what does that matter? And what should we do about it? Your honors? No, it doesn't matter. We noted that point as well, where she uses the term approved or approval. The issue here is, as judge Kirch said earlier, she took out the money in 2011, November of 2011. And then Mr. Johnson was appointed in May of 2012. And then one of his responsibilities under the plan document, which was one of the breaches we alleged for, for a one D is that he's responsible under the plan document for certain things, including that he files as required by law, the 5,500 with the department. So the fact that he didn't sign it, only as a question of whether he would have signed off on something that would have put him under penalty of perjury. The fact is he was still planned administrator and he had his duties under the plan and a huge, really the main issue with Mr. Johnson, is that he really didn't exercise his duties under the plan. He didn't perform them properly. And this is another example of that. So our allegation wasn't with respect to her withdrawals. It was with respect to in 2012 in October when the 5,500 got filed, there was no mention of the fact that she took $253,000. And what she said in her affidavit in Michigan state court were distributions and Merrill Lynch said they were distributions and her attorney said they were distributions. So why weren't they written as distributions on the 5,500? Does the, does the deference due to Johnson as the administrator have any impact on our understanding as to whether or not he breached his duty to act in accordance with the plan documents? I'm sorry, could you explain? Speaking to John, the deference that Johnson's owed as a, as a plan administrator, does that have any impact on our understanding as to whether Johnson breached the duty to act in accordance with the plan documents? If I understand you correctly? Yes. I mean, he, he as plan administrator had specific duties under the plan. One of which was in paragraph 2.4 D of the plan was to authorize and direct Sherrod as trustee for making payments out of the plan. So he had a specific duty where he was actually supposed to tell her, yes, you can take this amount for this purpose and yes, you can write the check. So in essence, by violating that, they both violated that because she just went off and wrote checks. She was supposed to receive authorization and direction. She never did. And he never provided any. And then in his deposition, which we included portions of in our supplemental appendix, he explains how he never really like had any documents from her, checked any documents, asked her. In fact, his ultimate answer was because she was an honorable and honest woman. And that's why he trusted her to make payments out of the plan. Any further questions? Thank you, Ms. Friedel. Thank you. We're going to move Mr. Volcker to you and we'll give two minutes on rebuttal. I just want to focus on the, on the last issue that the secretary's council brought up. And that is the issue of Mr. Johnson's involvement in the process of approving payments of those sort. And there was clearly inconsistent, consistent positions in front of the district court regarding that issue. As we laid out in our brief, Mr. Johnson did take the position. It did testify and there are statements in our brief that he met with Ms. Sherrod regularly, that they discussed plan expenses and that he did, he did find her to be an honest and caring, honest and genuine woman who, who was always looking out for the benefit of the plan and trying to minimize expenses. That was his position. That was his testimony. The secretary has a different position based on different excerpts from different deposition transcripts that, that seemed to lend to the contrary, but there's clearly a question of fact that should have been presented to the trier effect. Again, this goes to the issue. I believe that the court made the mistake of applying a presumption of a breach of fiduciary duty on the part of Mr. Johnson under the loan decision, because she came to the conclusion, the court came to the conclusion that there was self-dealing in the case. And, and, and that was a decision that, that, that was a question of fact and if there was or wasn't self-dealing. What's the question of fact about whether there was self-dealing? The question of fact is whether or not the bond was personal or whether it was to protect the plan. And there was, there was evidence on both sides your honor on that issue. What's the evidence that it was to benefit the plan? Because the, the evidence was that according to Ms. Sherrod, the court ordered that the bond be posted and that the, And that has been thoroughly litigated and we rejected that 10 years ago. And that, and that the, Were we incorrect about that? I don't know that it was fully litigated your honor. I think that I'm not sure it was fully litigated 10 years ago. I think, Was the statement in our opinion incorrect in your view? I, I, I have no opinion on that your honor. You need to have an opinion because otherwise it settles the matter. Well, I only have the opinion that under the facts, as I understand them that were presented to the district court, there was a question of fact as to whether or not the bond was for purely personal reasons or were both for plan and personal reasons. And the question was asked by your honor about whether there was any, any proof of expenses on the part of Mr. On part of Ms. Sherrod out of her own personal bank accounts. And I think there were, that was part of this massive documents. It was a massive documents. I admit they were faded documents and they were hard to read and hard to follow, but they, they, they, there were the, there are a massive documents that required a trial to adjudicate with witnesses, with, with, with, with a foundation laid. And I think what the judge did, she basically just threw up her arms and said, this is a mess. I'm not going to look into it. I'm going to rule against you because there's a presumption that you breached your fiduciary duties. And by throwing a big, massive documents at me, you haven't, you haven't, uh, you know, changed the change, the outcome of that burden. And again, the burden was improperly applied. She said her decision. I, I have, I've come to the presumption under the loan decision that because they're self-dealing that, that Mr. Johnson has failed to, to, to beat that presumption. That presumption doesn't apply in the circumstances. There was no 406 claim brought it should burden approved, should have been on the secretary. Thank you, Mr. Volcker. Thank you. Thank you, Mr. Gotch. I'll give you two minutes on rebuttal. Thank you, Your Honor. I'll be a very brief here, just based on what the, uh, uh, appellee has argued. And I just, uh, would just note that, uh, at least from our standpoint, uh, the, the bond issue when it was, uh, when it was litigated, uh, before the Michigan court, it has, and always will continue to be my client's position that, that it froze everything, including both the plan and her own personal assets. So do you think we were wrong about that? And all the courts were wrong that considered that issue? Does your client think we were wrong? Well, I, I, I can certainly suggest that my client believes this court, uh, uh, should have found that the, that the assets were, were, were sucked into the, um, into the, into the freeze, Judge. But I, I would at least submit that by the time there was a decision to reach it had been, it had been some time had passed. And I think we need to focus on what the expenditures were at the time that, that the state court made its ruling because she had to put down the bond plus a little bit of a bond fee with that, which he took from the plan. So I would submit that she did that at that time under the belief. And at least some of the state court records certainly would support that belief that she had that, that everything including both her and the plan were frozen in the, so it was in keeping with her fiduciary duty to be able to utilize those funds to be able to protect the plan from any kind of judgment enforcement. Thank you very much, Mr. Gotch. Thank you, Mr. Volcker. Thank you, Ms. Friedel.